[No. 17594.  Department Two.  May 24, 1923.]

ADAMS COUNTY, *Plaintiff*, v. ROBERT A. SLOANE *et al.*, *Respondents*, POTLATCH LUMBER COMPANY *et al.*, *Defendants*.

ROBERT A. SLOANE, *Respondent*, v. NATIONAL SURETY COMPANY *et al.*, *Appellants*, ROBERT A. SLOANE *et al.*, *Respondents*.[1]

PLEADING (205) — DEMURRER — WAIVER — AMENDMENT. Error in overruling a demurrer to the complaint is waived by an amendment to the complaint, and by pleading over, with trial on the merits.

COUNTIES (46)—HIGHWAYS (33)—CONTRACTS—BREACH OF SUBCONTRACTOR—LIABILITY. The liability of a subcontractor for breach of his contract to surface a road and furnish all labor, material and equipment necessary to complete it, covers items necessarily expended by the contractor in completing the work, although they were not lienable items under the contractor's bond to the county.

DAMAGES (72) — BREACH OF CONTRACT — EXPENSES INCURRED — RENTAL VALUE OF TOOLS USED. In a contractor's action against a subcontractor for breach of a contract to furnish everything necessary to complete the job, the rental value on certain tools and equipment furnished by the contractor, the value of which was lessened by their use, is a correct measure of the value of their use.

SAME (46)—HIGHWAYS (33)—CONTRACTOR'S BOND—LIABILITY— CONDITIONS. There can be no recovery on the bond of defaulting subcontractors where there was no compliance with the condition in the bond that notice be given to the surety of any act or omission that might involve a loss.

Cross-appeals from a judgment of the superior court for Adams county, Truax, J., entered April 17, 1922, in favor of certain claimants, in consolidated actions to determine the validity of claims against a fund due a contractor on public work, tried to the court. Affirmed.

[1]Reported in 215 Pac. 356.

*Post, Russell & Higgins,* for appellants.

*Tucker & Hyland (Ford Q. Elvidge* and *Mary H. Alvord,* of counsel), for respondents National City Bank *et al.*

*Groff & Davis,* for respondent Fidelity & Casualty Company of New York.

FULLERTON, J.—On September 27, 1919, the county of Adams let to Robert A. Sloane a contract for grading and surfacing a road in that county, known as Donohue Road No. 3. The road was some thirteen miles in length and was divided into 656 stations. Sloane gave a bond to secure the faithful performance of the work, conditioned as required by statute, with the United States Fidelity & Guaranty Company as surety. By the terms of the contract, the road was to be finished by June 1, 1920. It was not, however, finished and accepted by the county until sometime in December of that year.

Sloane seems to have performed the work of grading the road on his own account. On October 11, 1919, he let the work of surfacing the road to the copartnership of Hildenbrandt & Gemmrig. The work was let under two separate contracts; the first covering that part of the road from station 0 to station 328, and the second covering that part of the road from station 328 to station 656. The contracts, with reference to the character of the work to be done, were conditioned in accordance with Sloane's contract with the county. The first provided that the partnership would surface with gravel all that part of the road lying between station 0 and station 328, in accordance with the profiles, maps, plans and specifications furnished by the county and on file in the office of the county engineer, furnishing "all labor, material, tools and equipment

necessary therefor." For this service they were to be paid at the rate of $1.96 per cubic yard for gravel furnished and spread in place. By the terms of the second contract they were to surface the road between station 328 and station 656, furnishing all labor and equipment necessary to perform the service, for which they were to be paid at the rate of 75 cents per cubic yard for the gravel placed between stations 328 and 494, and 70 cents per cubic yard for gravel placed between stations 494 and 656. Both contracts were conditioned to the effect that, should the partnership at any time refuse or neglect to supply sufficient labor and material, tools or equipment, or, in the judgment of Sloane, fail in any respect to prosecute the work with promptness and diligence, Sloane "may take charge of said work and furnish all labor, material, tools and equipment necessary to complete this contract by the time herein specified, and all expense therefor shall be paid by the" partnership.

To secure the performance of the first contract, the partnership gave a bond to Sloane with the National Surety Company, as surety, in the penal sum of $7,000. The bond contained the following condition:

"The condition of the above obligation is such that, whereas, on the 9th day of October, 1919, the principal herein was awarded a contract by the said Robert A. Sloane, to surface with gravel and furnish all labor, material, tools and equipment necessary therefor for surfacing the Donahue Road No. 3 from Station 0-00 to Station 328-00 in Adams county, state of Washington, according to plans and specifications which are attached and made a part hereof.

"Now, therefore, if the above named principal shall faithfully perform all the provisions of said contract, plans and specifications, profiles and maps, and shall assume all risk and liability, and indemnify the county for all expenses or damages incurred by it by reason

of any damage that may accrue to any person or persons or property during the prosecution of the work, and shall pay all laborers, materialmen, mechanics and sub-contractors with provisions and supplies for the carrying on of said work; provided, however, the conditions of this obligation shall not apply to any money loaned or advanced to any such contractor, subcontractor or other person in the performance of any such work, then this obligation shall be void, otherwise to remain in full force and effect.''

No work was done under these contracts between the date of their execution and April 3, 1920, nor did Hildenbrandt & Gemmrig personally perform any work under them at any time. On the date last mentioned, they sublet the work to a copartnership doing business under the name of the Wallace Construction Company. This letting was likewise by two contracts, which were similar in form to the contracts Hildenbrandt & Gemmrig had entered into with Sloane. The contract price, however, was different. For the work which Hildenbrandt & Gemmrig were to receive from Sloane $1.96 per cubic yard, they agreed to pay the Wallace Construction Company $1.74 per cubic yard; for the work they were to receive 75 cents per cubic yard, they agreed to pay 65 cents per cubic yard, and for the work they were to receive 70 cents per cubic yard, they agreed to pay 60 cents per cubic yard. To secure the faithful performance of the first of these contracts the Wallace Construction Company executed a bond to Hildenbrandt & Gemmrig with the Fidelity & Casualty Company of New York, as surety, in the penal sum of $5,000. This bond was similar in its provisions to the bond given by Hildenbrandt & Gemmrig to Sloane. It, however, contained the additional provision following:

''1. Upon the discovery by the Obligee, or by the Obligee's agent or representative, of any act or omis-

sion that shall or might involve a loss hereunder, the Obligee shall give immediate written notice thereof with the fullest information obtainable at the time to the surety at its home office."

Shortly after entering into the contract with Hildenbrandt & Gemmrig, the Wallace Construction Company entered upon the performance of the work. They soon got into financial difficulties, and were unable for that reason to continue with the work. Sloane thereupon notified Hildenbrandt & Gemmrig of the conditions and demanded of them that they perform their contract with him. The partnership gave no heed to these notices or demands, and Sloane himself was compelled to furnish the relief, expending for that purpose in labor, material, supplies and equipment a large sum of money.

After the completion of the contract, a number of persons who severally claimed to have furnished labor, material or supplies used in the construction of the highway filed claims with the board of county commissioners against the fund in their hands due Sloane, but unpaid, and against the bondsman of Sloane. There was also a claim filed by Hildenbrandt & Gemmrig for the entire sum Sloane agreed to pay them for the performance of the work of surfacing. At this time the county had in its possession some $7,116.66 due Sloane upon the contract price for the construction of the road. Later on, namely, on February 14, 1921, the county began an action in the superior court, making defendants Sloane and his bondsman, the National City Bank, and all of the persons who had filed claims against Sloane and his bondsman, save Hildenbrandt & Gemmrig; the purpose of the action being to determine who was entitled to the fund then in its possession. In this action Sloane and his bondsman appeared and

answered by way of a cross-complaint, naming Hildenbrandt & Gemmrig and their bondsman, the National Surety Company, as cross-defendants. In their cross-complaint, they averred that none of the persons filing claims, as alleged in the complaint of the county, had valid claims against the fund then in the hands of the county, save certain of those it specially named. As against Hildenbrandt & Gemmrig they set forth the several contracts and bonds hereinbefore mentioned, and alleged that the Wallace Construction Company performed only a small part of the work undertaken by Hildenbrandt & Gemmrig, and thereupon notified Sloane "that without financial assistance to assist them to pay for labor, material, tools and equipment to complete the contract, they would be unable, and would refuse to go ahead with the work, and thereupon under provisions of paragraph 4, of the contract of the said Robert A. Sloane with Hildenbrandt & Gemmrig, the said Robert A. Sloane did advance sufficient moneys necessary to complete said work, and that said work was by the Wallace Construction Company completed on or about the 16th day of December, 1920." They further alleged that Sloane, in carrying out the work contracted to be done by Hildenbrandt & Gemmrig on the first of the contracts, was compelled to expend the sum of $26,535.07; that the total sum Hildenbrandt & Gemmrig were entitled to under the contract was $19,952.80; leaving a balance due Sloane from them of $6,582.27; that, on the second of the contracts, there became due Hildenbrandt & Gemmrig $3,177.09, which sum had been applied on the loss under the first of the contracts, leaving a balance due Sloane of $2,817.33; for which sum they demanded judgment against Hildenbrandt & Gemmrig and their bondsman.

To the cross-complaint, Hildenbrandt & Gemmrig and the National Surety Company demurred, which demurrer the trial court overruled. After the demurrer was overruled, the National Surety Company answered, alleging matters tending to show want of liability on its part upon the bond. On February 14, 1921, Sloane, as plaintiff, began an independent action against Hildenbrandt & Gemmrig, the National Surety Company, and the persons making claims against the funds in the possession of the county; the complaint being in substance the cross-complaint he filed in the action begun by the county. To this complaint Hildenbrandt & Gemmrig and the National Surety Company also demurred, and, on their demurrer being overruled, answered jointly. In the answer they denied the allegations of the complaint which charged them with liability, and by a cross-complaint asked that the Walace Construction Company and their surety, the Fidelity & Casualty Company of New York, be made parties to the suit, and that an accounting of the transactions be had, averring that upon such an accounting there would be found due the cross-complainants, Hildenbrandt & Gemmrig, the sum of $8,018.28. The Walace Construction Company and their surety thereafter appeared in the action; the former answering the complaints of Sloane and Hildenbrandt & Gemmrig, denying their material allegations, and averring by way of an affirmative answer, that Sloane was indebted to Hildenbrandt & Gemmrig on account of the work performed by them in the sum of $5,126.54, and that Hildenbrandt & Gemmrig were indebted to them in a like sum. The prayer of the answer was for an accounting. The answer of the Fidelity & Casualty Company of New York was a denial of liability. Certain of the claimants named as defendants made de-

fault and certain others appeared, but as their rights were determined in separate judgments from which there has been no appeal, they need no further notice in their capacity as parties.

After the appearances of the parties as above stated, the actions were consolidated for trial as an action for an accounting, and thereafter a trial was had. The court, however, made no findings of fact in which is set forth in detail the items of debit and credit allowed or disallowed. There is, however, in the record a memorandum opinion of the court in which he sets forth the contested items, indicating his holding thereon. As a final result, it was adjudged that Sloane was entitled to recover against Hildenbrandt & Gemmrig, and their surety, sums aggregating $2,583.25, with interest, and that Hildenbrandt & Gemmrig were entitled to recover against the Walace Construction Company the sum of $6,625.92, but were not entitled to recover against the surety of the latter company, the Fidelity & Casualty Company of New York. Hildenbrandt & Gemmrig and the National Surety Company appeal.

The appellants first assign error on the order of the court overruling their demurrer to the complaints of Sloane. As against Hildenbrandt & Gemmrig, it is contended that it fails to state a cause of action, because it is not alleged that Sloane took over the work on the default of the Wallace Construction Company; and that it fails to state a cause of action against the National Surety Company because it shows a loan and advancement of money to the defaulting company; a liability for which it is expressly exempted under the conditions of its bond. But to these objections there are at least two sufficient answers. In the first place the complaint, at the conclusion of the testimony, was by leave of court amended in these particulars so as

to meet the objections. In the second place, the appellants did not stand on their demurrers, but answered over, asking for an accounting which was granted them, and the cause was thereafter tried on its merits. By the express terms of the statute this court is required in such cases to hear and determine the cause upon its merits.

In this connection the appellants argue further that the evidence fails to show that Sloane did more than loan and advance money to the Wallace Construction Company, and that the trial court was in error in its conclusion that he was obligated to and did take over the work. On this branch of the case, the trial court uses this language:

"One of the vital points in the cases concerning which there is a conflict of testimony is whether or not Robert A. Sloane took over the contracts of Hildenbrandt and Gemmrig and of the Wallace Construction Company and completed the work that these contractors should have performed, or whether Sloane furnished funds and paid the bills of the Wallace Construction Company only thus helping the Company out of its difficulties. In the opinion of the Court the evidence preponderates in favor of the conclusion that Sloane took over the contracts and completed the work, and a finding to that effect may be entered, the pleadings being deemed to be amended to correspond to what the Court considers to be the weight of the evidence. The fact that the crusher plant may not have been taken in charge by Sloane's foreman until about August 1st does not determine necessarily that the taking over of the work by Sloane did not begin until that date. The affairs of the Wallace Company were complicated at the time they called upon Sloane for assistance. The reorganization and rehabilitation of the work could not be brought about at once and it should not militate against the interests of Sloane that he paid some of the accounts and bills incurred by the Wallace Construction Company prior to the first day

of August. Paying these claims beforehand constituted a step in the taking over of the work."

The evidence, as we read it, fully justifies these conclusions. The Wallace Construction Company early gave indications that they were financially unable to complete their contract, and the record is replete with evidence that Sloane repeatedly gave notice, both orally and in writing, to Hildenbrandt & Gemmrig of this situation. The latter gave the matter no attention; in fact, did nothing more than to demand, as the work progressed, what they conceived to be owing to them as the difference between the price for which they undertook to perform the work and the price for which they had sublet the work to the construction company. Sloane was obligated, in virtue of his contract with the county, to perform the work, and, while he did not discharge the construction company and put on an independent crew of his own, the evidence is clear that he personally, and through his agents, took charge of the work, supplying new and additional labor, material, tools and equipment, and treating the construction company as mere agents and employees.

It is objected that many of the items allowed by the court were non-lienable against the bond of Sloane, and were thus improperly allowed. But lienability or non-lienability of the items as against his bond is not the test of liability between Sloane and his subcontractors and their bondsman. The subcontractors, it will be remembered, undertook to surface the road, and to furnish "all labor, material, tools and equipment necessary to perform" that service. The bond given by a contractor.for a public work covers only designated items called lienable, and, of necessity, much of the equipment furnished necessary for the performance of the work would not come within the terms of

the bond. But a subcontractor is bound by his own contract, and not by the terms of the bond of his principal. If he breaches his contract by failing to furnish the items he agrees to furnish, and his principal is compelled to furnish them, the principal recovers because of the breach of the contract, not on the theory that the items furnished are lienable. A study of the items allowed by the court convinces us that he allowed no item not clearly within the terms of the contract between Sloane on the one part and Hildenbrandt & Gemmrig and their bondsman on the other. It is true that some of the tools and equipment necessary for the successful prosecution of the work survived their use thereon and had value for a similar use on like work. For these a rental charge was made. But we can see no objection to this. They were furnished by Sloane for use on the work. They were necessary to the performance of the work, and were lessened in value by their use thereon. We cannot think that a charge based on the rental value of the articles is an incorrect measure of the value of their use.

The appellants also complain because the court refused to allow them a recovery against the bondsman of the Wallace Construction Company for the amount allowed them as a recovery against that company. We have quoted a condition of the bond, and we find no evidence of a compliance with the condition. There was no error, therefore, in denying a recovery.

Sloane and his bondsman have appealed from the order of the court disallowing an item of $1,995, listed as an overhead charge. But this was properly disallowed under the evidence, even it it could be under any circumstance a proper charge. There was no showing that it was necessarily expended.

Our conclusions require an affirmance of the judg-

ment, and it is so ordered. Sloane and his bondsman, and the Fidelity & Casualty Company of New York, will recover their costs in this court.

MAIN, C. J., HOLCOMB, TOLMAN, and PEMBERTON, JJ., concur.